# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| MID-AMERICAN SALT, LLC f/k/a MIDWEST SALT OF FORT WAYNE, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 1:16-CV-285-HAB |
| BOB & DAVE'S LAWN AND LANDSCAPE MAINTENANCE, INC., d/b/a MIDWEST MELT SOLUTIONS, | ) ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This case presents yet another illustrative example of the seemingly self-evident proposition that seven-figure business transactions should be preceded by a written and signed contract. Here, Plaintiff Mid-American Salt, LLC, f/k/a Midwest Salt of Fort Wayne ("Seller") initiated its performance of a more than two-million-dollar transaction for the sale of Moroccan salt without first having a signed contract from Defendant Bob & Dave's Lawn and Landscape Maintenance, Inc. d/b/a/ Midwest Melt Solutions ("Buyer"). When the transaction ultimately fell through, Buyer claimed that it was not liable because no contract existed. Buyer now moves for summary judgment[1] on Seller's claim for damages, asserting: (1) that the contract fails for lack of a condition precedent; and (2) Seller cannot prove damages from the alleged breach in any event. Seller counters that parol evidence defeats Midwest's interpretation of the contract, and further

---

[1] Buyer also filed a Motion to Strike (ECF No. 51). Defendant bases its Motion to Strike on its contention that certain evidence designated by Seller contradicts prior Rule 36 admissions. Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies Buyer's Motion to Strike. The Court has noted Buyer's objections and will consider the objections to the extent they arise in the Court's summary judgment analysis.

that there is sufficient evidence of its damages to require a trial. Because the Court finds that genuine issues of material fact exist, Buyer's Motion for Summary Judgment will be denied.

## I. FACTUAL BACKGROUND

Buyer is a landscaping company located in Wisconsin. A significant part of Buyer's business is snow removal, both providing snow removal services on its own and selling bulk rock salt to other snow removal companies. Generally, Buyer had been able to meet its salt demand through domestic suppliers such as Morton and Cargill. However, in the summer of 2014, it became clear that domestic suppliers would not be able to meet the demand for rock salt in the Great Lakes area. Accordingly, Buyer sought out alternative sources of salt.

Buyer ultimately turned to Seller. Seller had access to salt from Morocco through its Spanish supplier, Pardira Premium S.L. ("Pardira"). This was the first time that Buyer had done business with Seller. Buyer's order was in excess of 24,000 tons, which was Buyer's largest salt order in the history of the business.

The parties agree that the contract for the salt purchase was the subject of extensive negotiation. Relevant to the current dispute are the negotiations regarding paragraph 10. Seller's initial draft contained the following provision:

> 10. This agreement will be effective upon [Buyer] and [Seller's] signing of this Agreement document and monies being transferred in accordance with this Agreement. Delivery timing will be provided upon confirmation of this agreement.

Buyer had its attorney review and propose significant changes to Seller's draft. One of those changes was to strike the language "and monies being transferred in accordance with this Agreement" from paragraph 10.

By August 2014 market conditions were such that any further delay in consummating the agreement would cost both sides additional money. On August 7, 2014, Seller sent another draft

agreement to Buyer, emphasizing that a "fast decision" was needed. Buyer orally confirmed its agreement to Seller's most recent draft the same day, and Seller confirmed that the transaction would proceed via email. Seller then took the necessary steps to mobilize the shipment of the sale, which included wiring approximately $700,000.00 to Pardira. Seller forwarded an "updated" agreement to Buyer the next day, although it appears that the August 7 and August 8 documents are substantively the same.

Several days passed without Buyer returning a signed copy of the agreement. On August 11, 2014, Seller reached out to Buyer to inquire as to the status of the contract. A text message exchange occurred between representatives of the parties in which Buyer stated, "we have a commitment so don't worry." (ECF No. 49-1 at 113–16). Buyer further promised to provide a signed copy of the agreement the next day. True to its promise, Buyer did provide a signed copy of the agreement (*Id*. at 19) (the "Agreement") and requested Seller's wiring instructions so that the required down payment could be made. Notably, the only substantive change to the Agreement from the initial draft proposed by Seller was a handwritten provision regarding title to the salt. The rest of the provisions, including paragraph 10, remained the same.

Unbeknownst to Seller, Buyer was purchasing the salt not for its own use but instead to re-sell to a third party. Sometime between August 12 and August 19, 2014, Buyer's resale arrangement broke down. As a result, Buyer informed Seller on August 19, 2014, that it would not be purchasing the salt as agreed. Seller attempted to find another purchaser for the salt but was unable to do so. Seller was ultimately forced to cancel the shipment from Pardira. Seller maintains that, as a result, it lost the entire profit that it expected to realize from the sale of the salt, approximately $561,000.00.

## II. LEGAL DISCUSSION

A.    *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

B.  *Applicable Law*

As a threshold issue, the Court must determine the appropriate law to apply given the diversity of citizenship among the parties. On August 21, 2019, the Court issued an Order (ECF No. 53) asking the parties to address the choice of law issue in this case, particularly the issue of whether a choice of law provision could be enforced when the validity of the contract containing the choice of law provision was at issue. The parties timely submitted their briefs on the matter. (ECF No. 55, 57). The Court thanks the parties for their well-researched and written submissions.

Both parties rely on *Life Plans v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343 (7th Cir. 2015), in concluding that Indiana law applies. In *Life Plans*, the Seventh Circuit stated, "[e]ven if one party to the contract alleges the failure of a condition precedent, we apply the law chosen by the parties to all contractual issues." *Id.* at 357. This sentence would appear to be determinative here, since the primary defense to the contract raised by Buyer is that of the failure of a condition precedent. But the Court is not so sure.

When a federal court hears a case in diversity, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). *Life Plans*, a case initially decided by a district court sitting in Illinois, relied on *Smurfit Newsprint Corp. v. Southeast Paper Mfg.*, 368 F.3d 944 (7th Cir. 2004), for the choice of law statement cited above. *Smurfit* was also initially decided by a district court sitting in Illinois and relies entirely on Illinois law in making its choice of law determination. *Id.* at 949. Therefore, it is possible, if not likely, that the statement of *Life Plans* is binding precedent only for those cases where Illinois is the forum state.

Thankfully, the issue has been rendered moot by the parties' choice of law submissions. Federal courts "honor reasonable choice-of-law stipulations in contract cases regardless of whether

such stipulations are made formally or informally, in writing or orally." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In their choice of law submissions, both parties assert that Indiana law applies to this case. For the reasons stated in those submissions the Court finds the parties agreement on this point reasonable and will apply Indiana law to this dispute.

C.      *Genuine Issues of Fact Exist Regarding the Enforceability of the Agreement*

1.      <u>Parol Evidence</u>

While the nominal dispute before the Court is the enforceability of the Agreement, the parties' briefing focuses on the issue of parol evidence. Both parties agree that the parol evidence question is governed by Indiana's codification of the Uniform Commercial Code, specifically Ind. Code § 36-1-2-202. That statute states:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> (a) by course of dealing or usage of trade (IC 26-1-1-205) or by course of performance (IC 26-1-1-205); and
>
> (b) by evidence of consistent additional terms, unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

*Id*. Comment 1 to this UCC Section provides:

> 1. This section definitely rejects:
>
> (a) Any assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon;
>
> (b) The premise that the language used has the meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the commercial context in which it was used; and

(c) The requirement that a condition precedent to the admissibility of the type of evidence specified in paragraph (a) is an original determination by the court that the language used is ambiguous.

*Id*. at cmt. 1.

While the parties dispute how Section 202 applies to the case at bar, the Court concludes that an in-depth discussion of the Section is not necessary. A threshold requirement for the application of Section 202 is a finding that the agreement at issue is a final written expression of the parties' agreement. *Front v. Lane*, 443 N.E.2d 95, 97 (Ind. Ct. App. 1982). The determination of whether the parties intended a writing to be totally integrated must be based on all the relevant evidence. *Franklin v. White*, 493 N.E.2d 161, 166 (Ind. 1986). A review of that evidence suggests to the Court that genuine issues of material fact exist regarding the finality of the Agreement.

First, the Court notes that there is no integration clause in the Agreement. The existence of an integration clause does not control the question of whether a writing is intended to be a completely integrated agreement, but it is some evidence of the parties' intentions. *Id*. Here, the parties were each represented by counsel during the negotiations, and multiple drafts of the Agreement were exchanged. If these sophisticated, and legally represented, parties wanted the Agreement to represent the final integrated contract, they certainly had the ability to make that clear in the terms of the Agreement itself.

More importantly, when the evidence is viewed in a light most favorable to Seller there is ample support for the idea that the parties did not intend to be bound by the strict terms of the Agreement. The most obvious example of this is Section 11 of the Agreement. That provision provided, "[t]his contract shall be null and void if not accepted and signed by both parties by August 7, 2014." (ECF No. 49-1 at 119). There is no question that the Agreement was ***not*** signed by both parties by August 7, 2014. Seller sent revised versions of the Agreement to Buyer on

August 7 and 8, 2014. (*Id*. at 108–11). Buyer and Seller were exchanging text messages on August 11, 2014, regarding the lack of a signed contract. (*Id*. at 113–16). The Agreement was not returned to Seller for its signature until August 12, 2014. (*Id*. at 118). The Agreement was then backdated to August 7, 2014, to reflect the date of the **oral** agreement of the parties. (*Cf. id*. at 88; 108). If the parties intended for their oral agreements to supplement, and even replace, Section 11 of the Agreement, the Court concludes that a reasonable jury could conclude the same for Section 10.

Buyer seemingly understands its difficulty in this respect, conceding that "there could be a dispute as to whether the Contract was intended to be a 'fully integrated expression of agreement.'" (ECF No. 50 at 8, n. 10). As a workaround, Buyer asserts that the Agreement is, "at a minimum…a confirmatory memorandum of the parties' agreement." (*Id*.). This argument raises a question: of which oral agreement is the Agreement confirmatory? There is nothing in the record that indicates the parties had previously contemplated a situation in which Buyer could avoid its obligations under the Agreement simply by not paying. Quite to the contrary, all the designated evidence indicates that this was not the parties' intention. Brian Welch, Buyer's sales manager, goes so far as to say that this was "absolutely not" his understanding of the parties' agreement. (ECF No. 49-1 at 71). Simply put, the Court cannot conclude as a matter of law that the Agreement constitutes a final written expression of the parties' agreement or a confirmatory memorandum, and therefore cannot conclude that the expressions of intent made by the parties outside of the Agreement must be ignored. *See Sho-Pro of Ind., Inc. v. Brown*, 585 N.E.2d 1357, 1359 (Ind. Ct. App. 1992) (holding that the UCC requires a final written expression of agreement before the parol evidence rule applies).

In addition, the Court concludes that Section 10 of the Agreement is ambiguous when read in context with the remaining terms of the Agreement. A contract is ambiguous if a reasonable

person would find the contract subject to more than one interpretation. *Maynard v. Golden Living*, 56 N.E.3d 1232, 1238 (Ind. Ct. App. 2016). If contract language is ambiguous, a court must construe the terms to determine and give effect to the intent of the parties at the time they entered into the contract. *Id*. Courts may consider all relevant evidence to resolve an ambiguity. *Id*.

Section 10 requires that the Agreement must be signed, and monies must be "transferred in accordance with this Agreement," before the Agreement will become effective. (ECF No. 49-1 at 119). In interpreting this language, it is necessary to look to the Agreement to determine how monies are to be transferred; after all, monies must be "transferred in accordance with this Agreement" before the requirements of Section 10 are satisfied. The payment terms of the Agreement called for payment in stages. The first stage called for sixty percent of the purchase price to be paid "via wire transfer in advance of 5[2] P.M. EST Thursday August 7, 2014." (*Id*.). The second stage called for the remainder of the purchase price to be paid "by Letter Of Credit upon the salt being off-loaded on to the Terminal and prior to removal." (*Id*.)

The payment terms create several ambiguities in the language of Section 10. First, it was impossible for Buyer to comply with Section 10 by the time the Agreement was signed. By August 12, 2014, the date the signed Agreement was provided by Buyer, five days had elapsed since the deadline to wire the first payment. How, then, could Buyer ever transfer funds "in accordance with this Agreement" when it could not, as a matter of existential fact, make the first payment within the time frame required by the Agreement? Even if temporal impossibility were not an issue, the question remains as to when Buyer was finished transferring funds in accordance with the Agreement. Was it when it paid the first installment via wire transfer? Was it when the letter of credit was provided upon delivery? Was it when the final payment was made in satisfaction of the

---

[2] This term might say 3 p.m. rather than 5 p.m. The parties have designated multiple copies of the Agreement, both in draft and finalized form, and all are difficult to read.

letter of credit? None of these questions are answered either in the terms of the Agreement or in

Buyer's briefs to this Court. The Court concludes that these questions create ambiguity in the

language, permitting consideration of extrinsic evidence.

When parol evidence is considered, the determination on Buyer's motion for summary

judgment is straightforward. Welch repeatedly testified that Buyer never intended for the purchase

of the salt to be contingent on Buyer's down payment; Buyer only reached its current position

when it became clear that Buyer could not make that payment. (*Id*. at 64, 67, 70–71). Since the

primary goal of contractual construction under Indiana law is to ascertain the intent of the parties

at the time the contract was made, *Berkel & Co. Contractors, Inc. v. Palm & Associates, Inc.*, 814

N.E.2d 649, 657 (Ind. Ct. App. 2004), Buyer's after-the-fact legal interpretation cannot control.

Genuine issues of fact exist, and Buyer's motion for summary judgment must be denied.

2.      Waiver of Condition Precedent

Even if the Court concluded that it could not consider parol evidence, and it accepted

Buyer's position that it needed to enforce the plain language of the Agreement, summary judgment

would still be improper. Buyer describes the Agreement's requirement that funds be transferred as

"a condition precedent that must be performed before the agreement becomes binding, or a

condition that must be fulfilled before the duty to perform arises." (ECF No. 50 at 5). Since funds

were never transferred, Buyer asserts that the Agreement never became binding and it could not

have breached the Agreement.

However, as Seller rightly points out, conditions precedent can be waived. The party to

whom the benefit of a contractual condition precedent inures may waive that condition and demand

that the other party perform the contract. *Harrison v. Thomas*, 761 N.E.2d 816, 820 (Ind. 2002).

The performance of a condition precedent may be "waived in many ways," including the conduct

of one of the parties to the contract. *Id*. (first quoting *Johnson v. Bucklen*, 36 N.E. 176, 177 (1894); then citing *Penmanta Corp. v. Hollis*, 520 N.E.2d 120, 122 (Ind. Ct. App. 1988)).

Here, the Court concludes that the designated evidence, when viewed in a light most favorable to Seller, supports Seller's argument that the condition precedent was waived. First, the Court concludes that the condition precedent inured to the benefit of Seller.[3] It was Seller that proposed the term and reinserted the term when Buyer attempted to remove it. The intent of the condition precedent was likely to avoid the very situation that has come to pass, with Seller left holding the bag after Buyer's refusal to perform. With the condition precedent inuring to the Seller's benefit, it could and did waive the condition precedent. The designated evidence shows that, upon receiving Buyer's oral confirmation on August 7, 2014, Seller took steps to mobilize the shipment of salt, including wiring $700,000.00 to Pardira. A reasonable jury could conclude that these steps represented Seller proceeding to fulfill its duties under the Agreement without first receiving any funds, thus waiving the condition precedent.

Buyer counters this argument by citing to *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015 (Ind. 1998), for the proposition that it could assert the condition precedent to void the Agreement when it determined that its third-party agreement had fallen through. (ECF No. 50 at 6–7). The Court need not address the merits of this argument because the timeline renders it irrelevant. As noted above, Seller took the actions resulting in waiver of the condition precedent on or about August 7, 2014. Buyer did not assert the condition precedent, assuming that's what it did, until August 19, 2014. (ECF No. 49-1 at 126). By the time Buyer sought to enforce the

---

[3] Buyer asserts, without explanation, that "[u]nder the circumstances, the 'funds transfer' provision inured to [Buyer's] benefit." (ECF No. 50 at 13). Whether or not it is true, Buyer's assertion presupposes that the appropriate time to evaluate the parties' intent is weeks after the Agreement was signed; i.e., when Buyer's third-party agreement fell through. Since the Court must evaluate the intent of the parties at the time the Agreement was made, *Berkel*, supra, Buyer's argument is without merit.

11

condition precedent it had already been waived. Therefore, even if the Agreement contained an enforceable condition precedent, the designated evidence demonstrates a genuine issue of material fact as to whether Buyer could assert it to avoid the Agreement.

D.      *Genuine Issues of Material Fact Exist Regarding Seller's Damages*

The summary judgment issue with respect to Seller's damages can be reduced to a simple question: did Seller lose a sale when Buyer cancelled its order? Buyer argues no, relying on Seller's expert to claim that there was no ship to deliver Buyer's salt, and further relying on Seller's admissions to argue that Seller had no salt to sell to Buyer in any event. (ECF No. 48 at 11). Seller disagrees, stating that it was forced to cancel the late-August shipment to Buyer and could not reschedule that shipment due to an unavailability of ships. (ECF No. 49 at 23–24).

After reviewing the designated evidence, the Court concludes that genuine issues of material fact exist that require the determination by a fact finder. Seller's contract with Pardira calls for only a single shipment to Chicago/Milwaukee from July 15 through October 15, 2014. (ECF No. 48-1 at 26–27). Accepting Seller's designated evidence that it cancelled Buyer's shipment, which was to go to Milwaukee, this would suggest that one of Seller's limited number of shipments was cancelled. That being said, the designated evidence does call into question whether Seller could have made the shipment to Buyer as agreed. Seller admits that "no vessel was nominated to fill the order set forth" in the Agreement. (ECF No. 56-1 at 2). Since Buyer's shipment was expected to arrive in the final week of August 2014 (ECF No. 49 at 23), and Buyer cancelled the shipment on August 19, 2014, this would mean that no specific ship had been selected to carry Buyer's shipment mere days before the shipment was scheduled to leave. However, Seller's expert stated in his report that "ships were booked months in advance" in 2014 for Great Lakes deliveries. (ECF No. 48-1 at 12). The designated evidence, then, is in conflict as to whether

12

Seller had salt that could be delivered and sold. Because of this conflict, and other factual issues involving intercontinental maritime capacity and international salt supplies, Buyer's motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, Buyer's Motion for Summary Judgment (ECF No. 48) and Motion to Strike (ECF No. 51) are DENIED. By separate entry this matter will be set for trial.

SO ORDERED on September 16, 2019.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
